UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVA MCGEE,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:20-cv-001543-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 14). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 17).

Plaintiff presents the following issues:

1) Whether the ALJ failed to provide legally sufficient reasoning in weighing the medical opinions; 2) Whether the ALJ provided clear and convincing reasoning to reject the testimony of the plaintiff; 3) Whether these failures were harmful; and 4) Whether this case should be remanded for payment of benefits or further proceedings.

(ECF No. 14, p. 5) (capitalization omitted). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Medical Opinions

#### 1. Standards of review

Plaintiff argues that the ALJ erred in evaluating the medical opinions in this case by (1) relying on non-examining physicians' opinions as substantial evidence and (2) failing to provide legally sufficient reasons for rejecting the opinions of examining physician Dr. Steven Stoltz. (ECF No. 14, p. 9).

As an initial matter, the parties disagree as to the standards that guide this Court's review. Plaintiff cites regulations, 20 C.F.R. § 404.1527 and 20 C.F.R. 416.927, that give more weight to medical opinions based on sources who examine and treat a plaintiff. (ECF No. 14, p. 5). Likewise, Plaintiff cites case authority that requires an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting treating and examining medical opinions. (ECF No. 14, p.6); *see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (alteration in original and internal citations omitted); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

However, Defendant argues that new regulations govern this case and displace the articulation requirements in the above case authority. (ECF No. 19, p. 4). The Court agrees with Defendant.

Importantly, the regulations that Plaintiff cites apply only to claims filed before March 27,

2017. *See* 20 C.F.R. § 404.1527; 20 C.F.R. 416.927. As Plaintiff notes in her opening brief, and as the record reflects, she filed her application on June 1, 2018. (ECF No. 14, p. 3); (A.R. 15, 204). Accordingly, the agency's "new" regulations—concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017—govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.[1]

Accordingly, the Court will review the issues raised by the Plaintiff under the above standards.

### 2. Analysis

#### a. Reliance on non-examining physicians' opinions

Turning to the merits, Plaintiff argues that the ALJ improperly relied on non-examining physicians' opinions as substantial evidence. This argument concerns the ALJ's determination of Plaintiff's residual functional capacity "to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional postural movements." (A.R. 20). Specifically, Plaintiff argues that the ALJ improperly relied on the non-examining 2018 opinions of Dr. Bobba and Dr. Wong—who opined that Plaintiff could perform light work—because these doctors did not have the opportunity to review later treatment notes in 2019 that Plaintiff characterizes as "showing much more severe symptoms." (ECF No. 14, p. 8); (A.R. 28-29, 93, 107). Citing case

---

[1] As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 792 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that Dr. Stoltz's opinions were found to be equally well-supported and consistent with the record as another but not exactly the same.

authority that prohibits an ALJ from interpreting raw medical data, Plaintiff argues that, because no physician's opinion addressed the later medical records, "the ALJ clearly rendered his own medical findings as to the physical limitations caused by these impairments, concluding that Plaintiff had no sit, stand or walk limitations and could engage in limited postural activities." (ECF No. 14, p. 8) (citing, among other cases, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)) (noting that an ALJ cannot substitute his judgment for competent medical opinions and must avoid the temptation to play doctor).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). An ALJ's RFC assessment is not required to be based solely on medical opinion. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, . . . the RFC need not exactly match the opinion or findings of any particular medical source."). Likewise, "the fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020). This is because "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished).

In light of these standards, the ALJ did not err in relying on the opinions of Dr. Bobba and Wong even though they did not have the opportunity to view later medical records. "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished). Here, the ALJ addressed in depth the records post-dating the opinions of Dr. Bobba and Wong, which

documented reports of pain, use of narcotic pain medication, and an MRI revealing degenerative changes to Plaintiff's lumbar spine. (A.R. 25-27). After this review, the ALJ concluded as follows:

> The undersigned acknowledges that records from late 2019 suggest an increase in the claimant's musculoskeletal abnormalities, but the claimant does appear to have experienced notable symptom relief from the different steroid injections and other conservative treatment she has undergone in recent months. Prior to late 2019, the records generally detail persistent reports of radiating low back pain with tenderness, but few other lumbosacral abnormalities. Moreover, the claimant's pain was consistently treated with conservative therapies.

(A.R. 27).

By evaluating the treatment notes and medical opinions at issue in the case, the ALJ did all that was required, rendering a RFC consistent with the record and supported by substantial evidence.

### b. Discounting of Dr. Stoltz's opinions

Plaintiff next argues that the ALJ failed to provide legally sufficient reasoning for rejecting Dr. Stoltz's opinions, who opined that Plaintiff could sit for two hours at a time for a total of six hours a day, that Plaintiff could stand and walk for one hour each at a time and for a total of two hours for walking and three hours for standing per day, and that Plaintiff could never climb or crawl. (ECF No. 14, p. 9); (A.R. 506-08). The ALJ concluded that Dr. Stoltz's opinions were unpersuasive for the following reasons:

> The undersigned finds the opinion of Dr. Stoltz is not persuasive (Ex. 12F). The undersigned finds the normal sensation, muscle strength, and reflexes as well as the normal ranges of motion apart from the claimant's lumbar flexion and extension, and the absence of tenderness in the claimant's lumbar spine do not support the significant standing, walking, or manipulative limitations detailed in Dr. Stoltz's medical opinion. His assertion that the claimant is able to perform a range of light work is consistent with the persistent reports of lumbar pain seen throughout the medical record. However, the undersigned finds Dr. Stoltz's assessment of the claimant's limited ability to stand and/or walk is not consistent with the claimant's consistently normal muscle tone and generally normal gait. Furthermore, the undersigned find the upper extremity limitations related to reaching, handling, fingering, feeling, pushing, and pulling are not consistent with the general absence of reports of neck pain or upper extremity limitations in the record. As previously discussed, the claimant's reports of these symptoms are

generally limited to a several month period in late 2019 with the objective evidence generally reflecting significant symptom improvement by December 2019. Furthermore, Dr. Stoltz opined that the claimant's limitations had been present since 2017 even though he only examined the claimant once in September 2019. The absence of a treatment relationship with the claimant means he lacked the personal knowledge to opine on what limitations the claimant experienced two years before he met her.

(A.R. 29).

The first reason given by the ALJ to find Dr. Stoltz's opinions unpersuasive is that they were inconsistent with the medical record. This reasoning invokes the consistency factor, which considers whether a medical opinion is consistent with other evidence from medical and nonmedical sources. The ALJ's assessment is supported by the ALJ's "detailed and thorough summary of the facts and conflicting clinical evidence, . . .interpretation thereof, and . . . findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Notably, the ALJ engaged in a lengthy evaluation of the medical record, pointing out the medical findings that the ALJ elsewhere concluded contradicted Stoltz's opinions. For example, the ALJ noted multiple medical records where Plaintiff had normal gait, could walk on her heels and toes, and had normal motion and muscle strength. (A.R. 22-27) (citing A.R. 445 – noting normal gait and that Plaintiff could walk on her heels and toes; 530 – noting normal gait, that Plaintiff could walk on her heels and toes, and had normal cervical spine range of motion; 673 – noting normal range of motion in cervical spine and 5/5 power in the upper and lower extremities). While Plaintiff criticizes the ALJ for assuming that normal gait and good muscle tone relate to her ability to stand and walk, she offers no evidence to contradict this reasonable conclusion. *See Queen v. Saul*, No. 1:19-CV-01694 JLT, 2021 WL 460503, at *4 (E.D. Cal. Feb. 9, 2021) (concluding that records showing normal gait can support an ALJ's rejection of standing and walking limitations); (ECF No. 14, p. 10). Similarly, while Plaintiff notes "[s]everal places throughout the record [where] Plaintiff was noted to have an antalgic gait and posture" and criticizes the ALJ's conclusion that Plaintiff's condition improved by December 2019, this, at most, amounts to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred. *See Thomas*, 278 F.3d at 954

("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."); *Queen*, 2021 WL 460503, at *4 (concluding that records showing antalgic gait were not enough to second-guess ALJ's conclusions where the record otherwise contained substantial evidence—such as findings of normal gait—to support the ALJ's determination); (ECF No. 14, pp. 10-11).

The next reason given to find Dr. Stolz's opinions unpersuasive is that they were unsupported by the record evidence. This reasoning invokes the supportability factor, which considers the relevant objective medical evidence and supporting explanations for a medical source opinion. Specifically, the ALJ concluded that "the upper extremity limitations related to reaching, handling, fingering, feeling, pushing, and pulling are not consistent with the general absence of reports of neck pain or upper extremity limitations in the record" and that "Dr. Stoltz opined that the claimant's limitations had been present since 2017 even though he only examined the claimant once in September 2019. The absence of a treatment relationship with the claimant means he lacked the personal knowledge to opine on what limitations the claimant experienced two years before he met her." (A.R. 29). Plaintiff offers no serious challenge to these findings, instead arguing that Dr. Stolz was not prohibited from giving a retrospective opinion even though he had no prior relationship with Plaintiff. However, it was reasonable for the ALJ to question Dr. Stolz's ability to render an opinion about Plaintiff's limitations based on time periods preceding the examination, for which Dr. Stolz did not obtain his own objective medical findings.

Lastly, it is worth repeating that the ALJ's assessment of Plaintiff's limitations relied on the medical opinions of Dr. Bobba and Dr. Wong, who opined that Plaintiff was capable of light work. (A.R. 28-29, 93, 107). The ALJ deemed these opinions persuasive based on their consistency with Plaintiff's "conservative medical treatment, the limited objective abnormalities seen in the record, which consist primarily of some spinal tenderness and muscle spasms, the claimant's generally normal gait, muscle strength, and neurological examinations, and her positive, if not total, response to injection therapy." (A.R. 29). And the ALJ assessed a RFC that

deemed Plaintiff capable of light work. (A.R. 20).

Accordingly, the Court concludes that the ALJ did not err in relying on non-examining physicians' opinions, and the ALJ's decision to deem Dr. Stoltz's opinion unpersuasive was supported by substantial evidence after consideration of the supportability and consistency factors.

### B. Plaintiff's Subjective Complaints

Next, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. (ECF No. 14, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 22). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints as follows:

> During the hearing, the claimant alleged a long history of severe low back pain that radiates regularly radiates into her legs (Hearing testimony). She asserted that she has consulted doctors and attempted forms of pain management including injections and over-the-counter medications, but she stated that they did not

> provide pain management. The claimant did indicate that she does experience some pain relief with the use of a TENS unit, which she uses two times every day. The claimant asserted that the use of ice and cold weather make her pain worse. She also reported that she uses a back brace several days per week. The claimant also reported severe neck pain that prevents her from turning her head. The claimant also reported chronic anxiety that makes it difficult for her to be around people.
>
> As for her specific functional limitations, the claimant asserted that she is unable to stand for more than two to three minutes (Hearing testimony). She asserted that she requires a cane to ambulate. The claimant also reported that she uses the shopping cart as a walker while in the grocery store. She asserted that she is unable to go to the store independently. The claimant also asserted that she is unable to sit for prolonged periods. She testified that she must spend around five hours per day lying down. She also stated that she is barely able to dress herself, because her pain is so severe.

(A.R. 21-22). Thereafter, the ALJ engaged in a lengthy recitation of the record, pointing out portions that were inconsistent or that otherwise did not support Plaintiff's subjective complaints. (A.R. 22-28). While Plaintiff argues that "[t]he ALJ failed to provide more than general findings" to discount Plaintiff's subjective complaints, the record reveals otherwise. (ECF No. 14, p. 16).

For example, the ALJ noted that Plaintiff filled out a Function Report in July 2019, in which Plaintiff "asserted that she is unable to shop in stores, which also conflicts with her hearing testimony" that Plaintiff shops. (A.R. 21, 50 (testimony that Plaintiff goes to grocery store), 301 (function report stating that Plaintiff's daughter does shopping)). Likewise, a Third-Party Function Report from Plaintiff's friend and neighbor reported that Plaintiff went shopping, which the ALJ noted was inconsistent with Plaintiff's Function Report. (A.R. 22, 330). Additionally, the ALJ noted that Plaintiff's reports of severe pain were inconsistent with normal examination findings. (A.R. 24 – "Additionally, while the claimant reported very high pain levels, her constitutional general appearance was described as normal. If she was experiencing pain that reached eight out of 10 on the pain scale, it is reasonable to conclude that she would have exhibited some pain behaviors.") (citing A.R. 530-534); (*see also* A.R. 26 - noting that Plaintiff "rated her current pain level as nine out of 10, but the objective findings show the claimant was not in acute distress"). And, in September 2019, "examination findings show[ed] [that Plaintiff]

did have some tenderness with some reports of pain with movement of the cervical spine, but her range of motion was still normal, which is inconsistent with the inability to move her neck that she described during the hearing." (A.R. 26, 673). In the end, the ALJ summarized his conclusions as follows:

> Overall, the undersigned finds the conservative treatment, limited symptoms, and absence of significant gait or other neurological abnormalities seen throughout the record does not support the extreme limitations, including an inability to dress herself, or the inability to perform almost all activities of daily living the claimant has alleged throughout the disability process. Furthermore, while the record does document some reports of neck pain, the claimant has not been diagnosed with a condition that supports the inability to move her neck that she described during the hearing.

(A.R. 27).

The ALJ correctly concluded that the inconsistencies cited above between Plaintiff's own statements, the statements of her friend/neighbor, and the medical record were valid reasons to discount her subjective complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility). Moreover, the ALJ correctly determined that a lack of objective medical evidence to support the degree of limitations that Plaintiff's testified to was a proper reason to discount her subjective complaints.[2] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

**C.  Remaining Issues**

Lastly, Plaintiff argues that the ALJ's errors were harmful and warrant a remand for the award of benefits, or at the least, a remand for further proceedings to determine if Plaintiff is

---

[2] The Court notes that Plaintiff did not have any treatment provider who opined that she was disabled.

disabled. (ECF No. 14, p. 21-23). However, as the Court has found no error with the ALJ's opinion, the Court need not address these issues.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 22, 2022**　　　　　　　　　/s/ Eric P. Gross
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE